IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

GREG JENSEN,                          §
                                      §
        Petitioner,                   §
                                      §
V.                                    §        CIVIL ACTION NO. G-07-568
                                      §
NATHANIEL QUARTERMAN, TEXAS           §
DEPARTMENT OF CRIMINAL                §
JUSTICE, CORRECTIONAL                 §
INSTITUTIONS  DIVISION,               §
                                      §
        Respondent.                   §

## MEMORANDUM AND ORDER GRANTING
## RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Before the Court[1] in this proceeding brought pursuant to 28 U.S.C. § 2254 is Respondent's

Motion for Summary Judgment (Document No. 8) against Petitioner's Federal Application for Writ

of Habeas Corpus (Document No. 1).   Having considered the motion, the response in opposition

(Document No. 11), the claims raised by Petitioner in his § 2254 Application (Document No. 1), the

state court records, and the applicable law, the Court ORDERS, for the reasons set forth below, that

Respondent's Motion for Summary Judgment (Document No. 8) is GRANTED, Petitioner's Federal

Application for Writ of Habeas Corpus (Document No. 1) is DENIED, and this case is DISMISSED

WITH PREJUDICE.


## I.      Introduction and Procedural History

Greg Jensen ("Jensen") is currently incarcerated in the Texas Department of Criminal Justice,

---

[1] On May 29, 2008, pursuant to the parties' consent, this case was transferred by the
District Judge to the undersigned Magistrate Judge for all further proceedings.  *See* Document No.
13.

Correctional Institutions Division, as a result of a 2000 conviction in the 212th District Court of Galveston County, Texas, for aggravated sexual assault of a child, Cause No. 97CR1083.  Jensen was charged by indictment with that offense on August 7, 1997, was found guilty by a jury on January 13, 2000, and was sentenced by the trial court to forty (40) years imprisonment.  Jensen's conviction was affirmed on appeal on January 10, 2002, in a published opinion.  *Jensen v. State*, 66 S.W.3d 528 (Tex. App.–Houston [14th Dist.] 2002, pet. ref'd).  Jensen's petition for discretionary review was thereafter refused on March 26, 2003.

On June 18, 2004, Jensen, through counsel, filed a state application for writ of habeas corpus.  The Texas Court of Criminal Appeals denied the application on December 5, 2007, on the findings of the state trial court without a hearing.  *Ex parte Jensen*, Application No. WR-52,978-02.  This § 2254 proceeding, filed by counsel for Jensen on December 7, 2007, followed.  Respondent has filed a Motion for Summary Judgment (Document No. 8), to which Jensen's counsel has filed a response in opposition (Document No. 11).  This § 2254 proceeding is therefore ripe for ruling.

## II.   Factual Background

The factual background, as set forth by the Texas Court of Appeals in its written, published opinion affirming Jensen's conviction, is as follows:

> [Jensen] lived with his then-girlfriend, Jacque Stoddard, Jacque's son and daughter, ages six and three, and the couple's four-month-old baby.  On the date of the alleged offense, Jacque went to work in the morning, and [Jensen] and the two older children set out for the beach that afternoon.  The exact time at which [Jensen] and the children arrived home is disputed.  [Jensen] claims they did not go home before picking up Jacque from work. [Jensen's] mother and grandmother testified that he came by the family business to get the baby sometime between 2:00 p.m. and 3:30 p.m.  Around 5:00 p.m., [Jensen] drove Jacque home from work.  Jacque prepared dinner and told the children to change into their pajamas. [Jensen] left the home to take a ride during this period.  After changing clothes, the three-year-old complainant

("K.B.") brought the swimsuit she had been wearing to her mother.  The swimsuit was soiled with blood in the crotch area.  Jacque testified that K.B. told her  [Jensen] had put his finger "down there" and that it hurt.

Upon hearing this statement from her young daughter, Jacque paged [Jensen], called [Jensen's] grandfather to take her to the hospital, and locked the door to their home.  When [Jensen] arrived, he and Jacque exchanged words through the locked door.  [Jensen's] grandfather arrived, and Jacque took the three children to his truck.  [Jensen] approached the truck and took the oldest child out of the vehicle.  When the grandfather refused to take Jacque to the hospital emergency room, she got out of the truck and ran to a nearby liquor store, where she called "911."  [Jensen] fled the scene.

Officers Williams, Smart and McClane responded to Jacque's call and arrested [Jensen] shortly after their arrival.  Officer McClane testified that when [Jensen] approached the apartment, he stated to Jacque, "Why are you accusing me of this? You're going to ruin everything.  All I did was stick my finger in her butt with her bathing suit on."  After [Jensen] left with the officers, Jacque took K.B. to the hospital for an examination.  A follow-up exam the next day revealed bruising beneath the hymen and on the hymen itself; an exam of the anus showed redness as well as irregularity and thickness of the folds of the anus.

The State charged [Jensen] with aggravated sexual assault of a person less than fourteen years old, and not the appellant's spouse, alleging [Jensen] had placed his finger in K.B.'s female sexual organ.  *See* TEX. PEN. CODE ANN. § 22.021(a)(1)(B)(i)  (Vernon 1994 & Supp. 2002). [Jensen] pleaded not guilty.  The jury found [Jensen] guilty as charged in the indictment.  The trial court assessed punishment at forty years' confinement.

*Jensen v. State*, 66 S.W.3d at 532-33.  In addition, in connection with its consideration of Jensen's

various points of error on appeal, the Texas Court of Appeals summarized the evidence presented

at trial as follows:

The complainant testified in the videotape that "he put his finger in my (inaudible) and make [sic] blood."  When asked who touched her private part, K.B. answered, "Daddy."  In her live testimony, the State asked K.B. if [Jensen] had ever touched her in a way that hurt.  She responded affirmatively and said that it happened "by holding my private part."  She illustrated the touching by pointing to the private parts of a doll.  The prosecutor then asked her what [Jensen] touched her with and whether she had said it was his middle finger.  She responded affirmatively. . . . . Moreover, Jacque, the outcry witness, stated that after K.B. showed her the blood on the swimsuit's crotch area, K.B. told her, "Daddy put his finger down there." . . . . Joy Blackmon, a physician's assistant in the University of Texas Medical Branch

3

(UTMB) Department of Pediatrics, who serves as the clinical coordinator of the ABC Clinic, performed a follow-up exam on K.B. the day after the incident. Blackmon testified that the examination revealed bruising inside the genital area beneath the hymen as well as bruising on the hymen. She also testified that K.B.'s anus appeared red and that the rugae, which are the folds to the anus, were asymmetric and irregular looking. Blackmon stated that these findings were consistent with the medical history she had received. Dr. James Lukefahr, a pediatrician at UTMB and the medical director of the ABC Clinic, testified that he reviewed the exam records shortly after the exam and again before he came to court. He noted bruise-like findings "very clearly" evident in several locations in and around the hymen.

*Jensen*, 66 S.W.3d at 534.

III.   **Claims**

Jensen alleges, in four claims, that his trial counsel, Jeffrey Kemp, was ineffective for:

1.   opening the door to testimony that Jensen failed to make a statement to police following his arrest;

2.   failing to object to Jacque Stoddard's testimony that counsel gave her incorrect information about the contents of Kristine's videotaped interview;

3.   opening the door to testimony that Jensen physically abused Jacque Stoddard by asking about her "rocky relationship" with Jensen; and

4.   eliciting the inadmissible opinion testimony of the CPS caseworker, Bel Tucker, that Kristine was telling the truth about the sexual abuse.

Jensen raised claim three in his direct appeal, and all four claims in his state application for writ of habeas corpus. All of the claims were rejected by the state courts on the merits.

Respondent argues in his Motion for Summary Judgment that no relief is available to Jensen on any of his ineffectiveness claims under § 2254(d) because the Texas courts' adjudication of the claims was not contrary to or an unreasonable application of clearly established Federal law as established by the Supreme Court of the United States nor was it based on unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Jensen, in

4

response, argues that the state court's adjudication was an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1994), and its progeny.

## IV.   <u>Standard of Review</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited.  28 U.S.C. § 2254(d) provides:

> (d)   An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision.'" *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*, 538 U.S. 634, 123 S. Ct. 1848, 1853 (2003) (quoting *Williams*, 529 U.S. at 405-406).  A state court

decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. But "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'" *Price*, 538 U.S. at 641 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S. Ct. 357 (2002)).

As for factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000). In addition, the state court's factual determinations carry a presumption of correctness; to rebut them, the petitioner must present clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1) (2000). *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. dism'd,* 124 S.Ct. 1652 (2004).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding. Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Woodford*, 534 U.S. at 27 ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments and authorizes federal-court intervention only

when a state-court decision is objectively unreasonable."). Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative. In addition, the correctness of the state court's decision is not determinative. As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2535 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted). Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its reasoning. *Neal v. Puckett*, 286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Pondexter v. Dretke*, 346 F.3d 142, 148-9 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004).

## V.    Discussion

In his direct appeal, Jensen raised one of his ineffectiveness claims: that counsel was ineffective for opening the door to evidence of Jensen's extraneous offenses. The Texas Court of Appeals rejected the claim, finding that Jensen had failed to show that counsel's performance was deficient:

> In [Jensen's] second point of error, he contends his trial counsel was ineffective because he "opened the door" to evidence of [Jensen's] extraneous misconduct during the guilt-innocence phase of the trial.
>
> When reviewing a claim of ineffective assistance of counsel under the first prong of *Strickland*, a strong presumption exists that defense counsel's conduct was reasonable and constituted sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. We evaluate the totality of the representation from counsel's perspective at trial, rather than counsel's isolated acts or omissions in hindsight. *Gutierrez v. State*, 8 S.W.3d 739, 749 (Tex. App. – Austin 1999, no pet.). Any error in trial strategy will be deemed inadequate representation only if counsel's actions lack any plausible basis. *Howland v. State*, 966 S.W.2d 98, 104 (Tex. App.–Houston [1st

Dist.] 1998), *aff'd,* 990 S.W.2d 274 (Tex. Crim. App. 1999)).

[Jensen's] trial counsel testified about his trial strategy at the motion for new trial hearing. In contention is a point during trial counsel's examination of Jacque, K.B.'s mother, when counsel asked whether Jacque's relationship with [Jensen] was a "rocky" one. Later, during its examination of Jacque, the State followed up with an inquiry about abuse by [Jensen], arguing that [Jensen] had "opened the door" to questioning on this subject. [Jensen's] trial counsel objected to the State's inquiry and argued that his question regarding the "rocky relationship" did not open the door to this topic for the State. The trial court overruled the objection and allowed the prosecution to question the witness about incidents of abuse. Jacque then described the physical, emotional, and mental abuse [Jensen] had inflicted upon her during the time they were together.

Contrary to [Jensen's] assertion that trial counsel was unable to explain his sound trial strategy, the record for the motion for new trial hearing reflects the following dialogue between [Jensen's] counsel on appeal and his trial counsel:

> Q:   [Appellate Counsel] Did you have any kind of sound trial strategy for asking that question that the Court said opened the door?
>
> A:   [Trial Counsel] Yes, I did.
>
> Q:   What was that?
>
> A:   I was attempting to bring out the fact that [appellant's] relationship with [Jacque] had been on and off. It had been one where she had often left him – had come back to him and that on one or more of the occasions when she left him, very often allegations would be made, charges would be filed or whatever. And the strategy was to help show that she might have some bias or some reason to fabricate the outcry statement which was extremely damaging to [appellant]. She was the outcry witness; and so, obviously I would want to challenge any potential bias that she might have that might have affected her making that statement.

[Jensen's] appellate counsel then raised an alternative trial strategy, that of portraying [Jensen] as a drug dealer, rather than a child molester. The fact that another attorney, including [Jensen's] counsel on appeal, might have pursued a different course does not necessarily support a finding of ineffectiveness. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Johnson v. State*, 987 S.W.2d 79, 88 (Tex. App. – Houston [14th Dist.] 1998, pet. ref'd). [Jensen] has the ultimate

burden to overcome the presumption that defense counsel's conduct was reasonable. *Gutierrez*, 8 S.W.3d at 749.  He must demonstrate not only that counsel's conduct was unreasonable under prevailing professional norms but also that the challenged action was not sound trial strategy.  *Id.*

[Jensen] has not proven by a preponderance of the evidence that trial counsel's representation fell below the standard of prevailing professional norms.  *See McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).  Nor has [Jensen] demonstrated that counsel did not possess a sound trial strategy.  Therefore, [Jensen] has not met the burden of proving the first prong of the *Strickland* test.  Accordingly, we overrule [Jensen's] second point of error.

*Jensen*, 66 S.W.3d at 543-44.  Later, in connection with Jensen's state application for writ of habeas corpus, the Texas Court of Criminal Appeals considered and rejected each of Jensen's ineffectiveness claims upon the findings and conclusions of the state trial court.  Those findings and conclusions are as follows:

1.      [Jensen] was indicted for aggravated sexual assault of a child, Kristine Barnhart, which allegedly occurred on or about March 24, 1997.

2.      [Jensen] hired Jeffrey Kemp to represent him.

3.      [Jensen] and Jacque Stoddard lived together in March 1997 with their baby and Stoddard's two children from a previous relationship, Michael and Kristine Barnhart. [Jensen] had a history of subjecting Ms. Stoddard to domestic violence.

4.      Ms. Stoddard was the outcry witness.  She questioned Kristine after finding fresh blood in the crotch of the child's bathing suit.  Kristine said [Jensen] "put his finger down there" and hurt her.

5.      Ms. Stoddard confronted [Jensen] and said "I know what you did." [Jensen] responded by saying "Let me explain" before being told about Kristine's outcry. When told of the outcry, [Jensen] said "All I did was stick my finger in her butt with her bathing suit on."  Officer Andrew McLane heard this statement and arrested [Jensen]. [Jensen] refused to make any further statement to the police.

6.      A medical examination of Kristine revealed that Kristine had bruising on and around her hymen and a small tear to her hymen.

7.      Kristine's brother Michael testified that on the day of the offense he was watching TV on the couch while Kristine was in her room with [Jensen].  Michael

testified that he heard her screaming but did not go look for her because he did not want to know what was happening.

8.      During a CPS videotape interview Kristine said that she heard a ghost and that [Jensen] hurt her by holding her private part when she was wearing a bathing suit.

9.      At trial [Jensen's] attorney challenged the credibility of Kristine and Ms. Stoddard.

10.      [Jensen's] attorney asked Officer McLane about his failure to ask [Jensen] whether he wanted to make a statement.  On redirect examination by the [State,] Officer McLane testified that [Jensen] refused to make a statement following his arrest. [Jensen's] attorney did not object to his testimony.

11.      [Jensen's] attorney asked Ms. Stoddard whether her relationship with applicant was "rocky."  After this cross examination the State offered [evidence] of [Jensen's] history of subjecting Ms. Stoddard to domestic violence.  The evidence was admitted over defense objection. [Jensen's] attorney testified at the Motion for New Trial hearing that [Jensen] wanted evidence of their rocky relationship to be brought out. [Jensen's] attorney testified in an affidavit in 2005 that he asked the question to show the jury that Ms. Stoddard had a motive to testify falsely and to fabricate evidence.  At the Motion for New Trial hearing [Jensen's] attorney testified that asking the question was part of his sound trial strategy.  In his 2005 affidavit [Jensen's] attorney stated, "I would not have asked the question had I thought it would open the door.  In retrospect, the question was worded poorly, and I should not have used the term "rocky relationship."

12.      [Jensen's] wife Michelle Jensen testified that he told her that Kristine could "tongue real good" and admitted to her that he took Kristine into the bedroom when Kristine's brother was present and while she was wearing a bathing suit.

13.      Ms. Stoddard testified that [Jensen's] attorney told her that the CPS videotaped interview of Kristine indicated that nothing happened to her.  Ms. Stoddard further testified that she saw the videotape and disagreed with the assessment by [Jensen's] attorney. [Jensen's] attorney did not object to this testimony.

14.      [Jensen's] attorney asked the CPS worker who interviewed Kristine if Kristine fantasized during the videotaped interview.  The CPS worker responded by saying that she believed Kristine was telling the truth.  [Jensen's] attorney did not object to the response. [Jensen's] attorney provided an affidavit in 2005 that he did not anticipate the answer but cannot recall why he failed to object to it.

15.      [Jensen] was convicted by a jury of aggravated sexual assault of a child on January 31, 2000.

10

16.     Another attorney, Joseph Salhab, substituted in to represent [Jensen] on appeal on February 24, 2000.  Then on March 1, 2000, David Disher was allowed to substitute in place of Mr. Salhab as [Jensen's] attorney on appeal.

17.     On April 3, 2000 a Motion for New Trial was had.  The issue of ineffective assistance of counsel was raised.  The motion was denied by Judge Henry Dalehite as he served as a visiting judge.  Judge Dalehite was the trial judge as well.

18.     The issue of ineffective assistance of counsel was pursued on appeal.  On December 12, 2003 the Fourteenth Court of Appeals issued a mandate affirming the judgment of conviction.

19.     In March of 2005, [Jensen's] trial attorney issued an affidavit that stated he did not remember why he asked the questions complained of to Officer McLane.  He also stated he did not remember why he failed to object to Ms. Stoddard's testimony about her conversation with him about the CPS tape or to the statement by the CPS interviewer that she believed Kristine.

20.     The testimony of Ms. Stoddard, the CPS interviewer, and Kristine and the statement of [ ] Officer McLean were not all the evidence the State presented to support a conviction.  The State presented physical evidence as well as testimony from Kristine's brother that corroborated Kristine's story.  [Jensen] made incriminating statements to persons other than Ms. Stoddard that were testified about [ ] in front of the jury.

21.     At [the] Motion for New Trial hearing the [Jensen's] attorney testified he asked Ms. Stoddard about the rocky relationship to show the jury that Ms. Stoddard had a motive to testify falsely and to fabricate evidence.  He stated under oath that he did not think his question opened the door to extraneous offenses.  He testified that he had a sound trial strategy for asking the question.  He wanted to expose witness bias.

22.     The complained of questions asked of Ms. Stoddard and of the CPS interviewer on cross-examination were the part of [Jensen's] attorney's trial strategy.  The strategy did not result in the outcome [Jensen's] attorney hoped for.  Such is often the case during cross-examination of the State's witnesses.

23.     The complained of instances where [Jensen's] attorney did not object were not so egregiously harmful as to have upset the adversarial balance between defense and prosecution such that the trial was rendered unfair and the verdict rendered suspect even when the cumulative effect of the errors is considered.

24.     The performance of [Jensen's] trial attorney Jeff Kemp was not error free or perfect.  It did not however fall to the level of ineffective assistance of counsel

considering the totality of the representation and the particular circumstances of this
case.

*Ex parte Jensen*, Application No. WR-52,978-02, at 247-251.   The foregoing adjudication of
Jensen's ineffectiveness claims is not contrary to clearly established Federal law as established by the
United States Supreme Court, is not an unreasonable application of clearly established federal law
as established by the Supreme Court, and is not based on an unreasonable determination of the facts
in light of the evidence presented in the state court proceeding(s).

Claims of ineffective assistance of counsel are measured by reference to the clearly established
federal law set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under
*Strickland*, to be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be
able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that
a fair trial could not be had.  *Id*. at 687.  Deficiency is judged by an objective reasonableness standard,
with great deference given to counsel and a presumption that the disputed conduct is reasonable.  *Id.*
at 687-689.   The prejudice element requires a petitioner to "show that there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the proceeding would have been
different."  *Id*. at 694.  "A reasonable probability is a probability sufficient to undermine confidence
in the outcome."  *Id.*  A petitioner has the burden to prove both the deficiency and the prejudice
prongs in order to be entitled to relief.  *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong
presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct
was the product of reasoned trial strategy."  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th  Cir.
1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993).  In order to overcome the presumption
of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to

12

have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel.  The determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record.  Each case is judged in the light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense.  *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984).  The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct.  *Strickland*, 466 U.S. at 690-691.  Counsel will not be judged ineffective only by hindsight.  "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 124 S.Ct. 1, 6 (2003); *Rompilla v. Beard*, 545 U.S. 374, 125 S.Ct. 2456, 2462 (2005) ("hindsight is discounted").

Here, as argued by Jensen, the state courts did not fully decide the issue of whether counsel's performance was objectively reasonable.  While the Texas Court of Appeals did consider the reasonableness of counsel's performance with regard to his opening the door to evidence of Jensen's extraneous acts (claim three), finding that counsel had a reasonable strategic basis for doing so, the Texas courts did not consider the reasonableness of counsel's performance in the other respects

13

alleged herein (claims one, two and four).  Jensen maintains that such a lack of consideration by the Texas courts compels a *de novo* review of his ineffectiveness claims.  The Court disagrees.

The absence of a complete determination by the Texas courts as to the reasonableness of counsel's performance does not warrant a *de novo* review of Jensen's claims in this § 2254 proceeding because a claim of ineffective assistance of counsel requires proof that counsel's performance was deficient <u>and</u> that such deficiency resulted in prejudice.  In a § 2254 proceeding, an ineffective assistance of counsel claim "may be rejected for want of either deficient performance or prejudice. . . . the absence of either prong is dispositive and a reviewing court is not required to inquire into a prong of the claim if the [petitioner] has failed to carry his burden on the other prong." *Pondexter v. Quarterman*, 537 F.3d 511, 520 (5th Cir. 2008), *pet for cert. filed* (Dec. 9, 2009) (No.08-7795 ).

Here, although the Texas courts did not decide whether counsel's performance was objectively reasonable in all the respects alleged by Jensen, it did decide that the counsel was not *ineffective*.  That decision necessarily encompassed a determination that Jensen had not met both the deficiency and or prejudice prongs of *Strickland*.  The Texas courts' ineffectiveness decision is fully supported by the record, and is, itself, an objectively reasonable application of *Strickland* to the facts and record in this case.  As set forth above, the evidence against Jensen was quite strong and it did not consist merely of the testimony of Jacque Stoddard, the outcry witness, and the CPS worker, Bel Tucker.  Instead, there was testimony from the victim, corroborating evidence from the victim's young brother, strong medical evidence, and the incriminating statements made by Jensen himself to Jacque Stoddard at the time of his arrest. Under *Strickland*, this evidence is not to be weighed against the evidence Jensen contends would not have been admitted but for counsel's deficient performance.

14

However, given the strength of the evidence about which Jensen has not complained in this case, there is no reasonable probability that, but for counsel's alleged unprofessional errors, "the result of the trial would have been different." *Strickland*, 466 U.S. at 694. Similarly, given the evidence against Jensen, it cannot be said that counsel's performance in any way "undermine[s] confidence in the outcome." *Id.* The Texas courts may not have used the exact language utilized by the Supreme Court in *Strickland* in discussing the prejudice prong, but that is not what is required under § 2254(d). It is the Texas' courts' ultimate decision, not its wording or its reasoning that is to be reviewed for reasonableness. *See Neal*, 286 F.3d at 246 ("It seems clear to us that a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision."). Upon this record, that ultimate decision, that counsel was not ineffective within the meaning of *Strickland*, is not objectively unreasonable. Accordingly, no relief is available to Jensen on his ineffectiveness claims under § 2254(d).

## VI.   Conclusion and Order

Based on the foregoing and the conclusion that Jensen is not entitled to any relief in this proceeding under § 2254(d), the Court

ORDERS that Respondent's Motion for Summary Judgment (Document No. 8) is GRANTED, Petitioner's Federal Application for Writ of habeas Corpus (Document No. 1) is DENIED, and that this § 2254 proceeding be DISMISSED WITH PREJUDICE on the merits. It is further

ORDERED that a Certificate of Appealability is DENIED. A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that

reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).  Where the claims have been dismissed on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.* at 484; *Beasley v. Johnson*, 242 F.3d 248, 263 (5th Cir.), *cert. denied*, 122 S.Ct. 329 (2001).  When the claims have been dismissed on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

Given the claims raised herein, the rejection of Petitioner's claims by the Texas courts, and the evidence against Petitioner, the Court determines that reasonable jurists would not find the assessment of Petitioner's constitutional claims to be debatable or wrong.  Therefore, Petitioner has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability will not issue.

Signed at Houston, Texas, this 26th day of February, 2009.


Frances H. Stacy
United States Magistrate Judge